Chris Nelsen and Robert E. Nelsen v. Commissioner.
Nelsen v. Commissioner
Docket Nos. 10339, 10340.
United States Tax Court
1948 Tax Ct. Memo LEXIS 231; 7 T.C.M. (CCH) 172; T.C.M. (RIA) 48039; March 22, 1948
Hugh W. Allin, Esq., and J. Emmett Tunney, Esq., 1006 Lafayette Bldg., Detroit 26, Mich., for the petitioners. Clarence E. Price, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings, consolidated for hearing and disposition, involve deficiencies in income tax liabilities for the year 1941 and income and Victory tax liabilities for the year 1943, as follows: Petitioner
Docket No.
Year
Deficiency
Chris Nelsen
10339
1941
$24,097.13
1943
51,328.40
Robert E. Nelsen
10340
1941
1,259.17
1943
6,646.98
The issues to be determined are: (1) Did the respondent err in determining that Anine K. Nelsen, wife of petitioner, Chris Nelsen, was not a *232 bona fide partner in the business known as Chris Nelsen Company, during the years 1941, 1942 and 1943, and that petitioner, Chris Nelsen, is taxable upon two-thirds of its net income for those years? (2) Did the respondent err by disallowing entertainment and sales expenses of the Chris Nelsen Company in the amount of $3,000 for 1941 and $15,000 for 1942? (3) Did the respondent err by disallowing wages and salaries of the Chris Nelsen Company in the amount of $1,700? (4) Did the respondent err by disallowing as a deduction contributions claimed by petitioner, Chris Nelsen, for the years 1941, 1942 and 1943, in the amounts of $200, $1,000 and $700, respectively? Other issues alleged in the petition were conceded and will be reflected in decision under Rule 50. From evidence, both documentary and oral, we making the following: Findings of Fact Petitioners filed their income tax returns for the years in question with the collector of internal revenue, district of Michigan, at Detroit. 1. Partnership Chris Nelsen (referred to hereinafter as petitioner) was born in Denmark and came to the United States in March, 1924. He was married while in Denmark and his wife, Anine K. Nelsen, *233 came to the United States in the fall of 1924. At all times material herein, petitioner resided in Royal Oak, Michigan. While petitioner was in Denmark he was a construction laborer and later a construction foreman. His first employment in the United States was as a construction laborer and as a straw boss. After about a year of such employment he became a foreman. The same fall that Anine K. Nelsen came to the United States, she, along with petitioner, began operating a boarding house in Royal Oak, Michigan. The Nelsen family lived in the house in which they operated the boarding house. This house contained approximately 10 rooms. A bank account was opened in the Royal Oak Savings Bank in the name of Anine Nielsen (Nelsen) on January 19, 1925. Some time in 1927 petitioner entered into an arrangement with Frank Ealy to complete a sewer contract. Petitioner was to supervise the jobs and get a certain percentage. He put $1,000 "in with the outfit." The source of the $1,000 was about $700 from Anine K. Nelsen and about $300 from petitioner. This venture was a failure and petitioner was unable to salvage any amount from his investment or receive any salary or drawing account. *234 During the period from 1927 until approximately 1931, petitioner worked for different general contractors, taking small jobs and doing piece work. Some time in 1931, petitioner entered into an arrangement on a subcontracting basis with the Frank Knight Co. through the Julius Porach Co. to furnish labor on a highway drainage job close to Flint, Michigan. At this time petitioner was doing the work and his wife was helping by putting capital in as they went along. The boarding house at Royal Oak was discontinued and another was started in Flint. In order to meet the payroll, the boys that worked on the job boarded with the Nelsens and were paid five or ten dollars a week as cash was available. Following the completion of this job, petitioner was only able to secure several small jobs and during the year 1934, he did "no work at all." During this period a few boarders were kept in the home. Petitioner took his first job as a "prime" contractor in 1937. This contract was with the village of Lawton, Michigan, and involved about $35,000. At this time petitioner had about $2,000 worth of equipment. The Lawton job was financed, partly by petitioner obtaining releases from material men prior *235 to having material paid for in order to obtain money on the work completed, plus placing a mortgage on the family home. Anine K. Nelsen contributed some $1,700 to $1,800 from her postal savings. During this period petitioner used the basement of his home as an office. Anine K. Nelsen helped with the office work when there "was nobody in the office." A telephone extension was connected with the living part of the home enabling her to take calls for the business. A protest in the matter of the estate of Anine K. Nielsen (Nelsen) signed by petitioner, sworn to on July 30, 1947, and filed with the internal revenue agent at Detroit, protested against inclusion in her estate of any part of the joint property. It contained a "Statement of Facts" concerning the abovementioned home, as follows: (3) Joint Property (a) Home - 117 Phillip Avenue, Royal Oak, Michigan. While the surviving spouse [petitioner herein] does not have proof of all the payments made on the purchase of the property, a substantial part, if not all payments were made by checks drawn by him on both his personal and business bank accounts. Elsewhere in the protest it is stated: "All the payments on the home were *236 made by Mr. Nelsen the greater portion out of his personal bank account." Again it is argued in the protest "Mr. Nelsen knew that the source of the joint property was his funds." The protest also recited that Christian Nelsen and Robert Nelsen had for over four years prior to Mrs. Nelsen's death assumed full management of the business, that she was consulted on all bids submitted and on large disbursements for machinery and other expenses, but otherwise took an inactive part. The protest contained the contention that even if the partnership had good will of some value, such good will attached to Christian Nelsen and Robert Nelsen "the two partners who had considerable experience in the business and had complete supervision of all of the construction work." The contention was made in the protest that the partnership had continued from 1928. During the year 1938 petitioner and Jens Jacobsen entered the general contracting business under the name of Chris Nelsen Company. Jacobsen contributed some $3,000 cash and two machines that petitioner valued at about $10,000; petitioner contributed some cash, one machine that cost $2,500 and other equipment to the company. A set of books and *237 records were kept for this company. Petitioner, Anine K. Nelsen, and Jacobsen consulted the cashier of the Almont Savings Bank in 1939 and asked him to draw up a partnership agreement for them and was referred to an attorney. They requested an attorney, "either in the year 1939 or 1940" to prepare a partnership agreement for the company but it was never completed because the attorney "became aware of the fact that the state law of Michigan prohibited a husband and wife from legally filing a partnership agreement." Petitioner insisted that he and his wife were equal partners. During the period 1938, 1939 and 1940 when petitioner and Jacobsen were "out working" Anine K. Nelsen attended to the telephone and whatever she could do. The office was at the Nelsen's house. Bids on jobs were discussed with Anine K. Nelsen. She and petitioner's son, Robert Nelsen, computed the payroll during this period. Partnership returns prepared by a firm of certified public accountants were filed for this company for the years 1939 and 1940. The returns showed petitioner and Jacobsen as the partners, also that the partnership began March 29, 1938, and dissolved December 31, 1940. Jacobsen "sold out *238 for so much" to terminate his interest in the Chris Nelsen Co. The income tax returns of Chris Nelsen Company reported receipts and income as follows: 1939 -
gross receipts
$157,858.16
net income
$22,893.74
1940 -
gross receipts
$139,593.85
net income
$14,129.38
1941 -
gross receipts
$366,847.63
net income
$107,770.67
1942 -
gross receipts
$569,838.24
net income
$24,489.76
1943 -
gross receipts
$442,479.80
net income
$93,733.48
Robert E. Nelsen, petitioner's son, started working for the Chris Nelsen Co. in February, 1937. He became a partner in the Chris Nelsen Co. to the extent of a one-third interest on January 1, 1941. The first office employee of the Chris Nelsen Co. was a "little high school girl" employed in the fall of 1941. Petitioner's attorney advised him to file a partnership return in 1941 and "to report on the income tax return of Mrs. Nelsen." A set of books was kept for the Chris Nelsen Co. for the taxable years. Partnership returns were filed for the Chris Nelsen Co. for the years 1941, 1942, and prepared by a firm of certified public accountants for 1941 and 1942. The return for 1943 does not indicate whether certified *239 public accountants prepared it. The returns showed petitioner, Anine K. Nelsen and Robert E. Nelsen as equal partners. The returns also showed the date of organization as January 1, 1941. Anine K. Nelsen died July 29, 1944. 2. Entertainment and Sales Expense The Chris Nelsen Co. was engaged in the business of general contractors with headquarters in Royal Oak, Michigan. The partnership return of income of the Chris Nelsen Co. filed with the collector of internal revenue, district of Michigan, shows a claimed deduction of $1,700 for entertainment and sales expense for 1941 but shows no such item of $3,000. The 1942 return shows a claimed deduction for traveling, entertainment and sales expense of $16,154.23. During the years 1941 and 1942, inspectors, city officials and other people were entertained by petitioner. Petitioner made, among other trips, trips to Terre Haute, Indiana, and Jacksonville, Florida. Robert E. Nelsen was working on a job in Terre Haute, Indiana, from June to December, 1942. The company's foreman and bookkeeper spent some time in Terre Haute, Indiana. 3. $1,700 Wages and Salaries Petitioners claimed $1,700 as entertainment and sales expense in the *240 partnership return of income for 1941. The respondent disallowed this amount for lack of substantiation. Some of the employees to whom petitioner claims to have paid part of the Christmas bonus money are still in the employ of the Chris Nelsen Co., and others are still in the city. 4. Contributions Petitioner in his individual income tax return for 1941 claimed deductions as contributions in the amount of $200. He claimed $100 as having been paid to the St. Peter's Lutheran Church and $100 to the Red Cross. Petitioner in his individual income tax return for 1942, claimed deductions as contributions in the amount of $1,000. He claimed $500 as having been paid to the St. Peter's Lutheran Church and $500 to the Red Cross. Petitioner in his individual income tax return for 1943, claimed deductions as contributions in the amount of $700. He claimed $500 as having been paid to the St. Peter's Lutheran Church and $200 to the Red Cross. The Commissioner has disallowed all the above contributions because of petitioner's failure to substantiate the deductions. The partnership return of the Chris Nelsen Co. for 1943 showed the amount of $326.06 as donations under item 24, other *241 deductions authorized by law. Opinion 1. Partnership Issue The respondent recognized Robert E. Nelsen, son of Chris Nelsen, as being a partner in the business of Chris Nelsen Co. to the extent of a one-third interest and has determined that petitioner Chris Nelsen is taxable on the remaining two-thirds interest. The determination is presumed to be correct. To overcome the presumption, petitioner contends that he, his wife, Anine K. Nelsen, and his son Robert E. Nelsen, were conducting the business as a partnership, each having a one-third interest. The Supreme Court, in the case of Commissioner v. Tower, 327 U.S. 280, stated the rule to be applied as follows: There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. Int. Rev. Code, §§ 181, 182. * * * Petitioner *242 contends that the alleged partnership between himself and his wife started about 1928. Sufficient evidence has been submitted to establish the fact that a new entity in the business of the Chris Nelsen Co. began January 1, 1941. Petitioner's son Robert was admitted as a partner at that date. Petitioner argues that the business was operated from March 29, 1938, to December 31, 1940, as a partnership comprised of himself, his wife and one Jacobsen. It is also established that Jacobsen terminated his connections with the business December 31, 1940. Assuming these facts to be true, petitioner has proved nothing as to the capital structure of the new entity that began January 1, 1941. The Tower case, supra, establishes the rule that one of the tests for partnership between husband and wife is that she invest capital originating with her. There is no evidence in the record connecting the organization as it existed before January 1, 1941, and after, other than the above-mentioned change of personnel, and the use of some of the wife's money at earlier dates. It is established that Jacobsen "sold out" but there is no evidence of record as to the capital interest of the alleged partners at *243 the time of the formation of the new company, January 1, 1941; nor as to how much capital was used or needed in the business during the taxable years. The evidence before us puts great stress on the alleged capital contributions of Anine K. Nelsen in regard to business arrangements transpiring between herself and petitioner before January 1, 1941, but it is not shown that the capital arrangement as it existed before that date continued into the capital structure of the entity organized January 1, 1941. There is no evidence before us as to how the "Jacobsen-Nelsen" partnership was converted into the alleged new partnership or what capital interest any of the alleged members claimed or how that interest was derived. The evidence of use of the wife's money, prior to 1941, is not sufficient to establish the partnership. The evidence is on the whole that the boarding house was conducted by both husband and wife. Though a wife may separately acquire income from a boarding house, this case indicates it was not a separate matter. Petitioners testified that "we started it, that she operated it, that we always felt what was mine was hers and what was hers was mine but it was her capital"; *244 also, that running the boarding house was a sort of cooperative proposition. This, with the statements in the protest filed in 1947, where it was contended that the home was paid for by him, is indicative that such moneys as are called hers appear equally to belong to him, with the result that the record before us is not convincing that she, as distinguished from her husband, contributed capital even in earlier years; and that it contributed to the business in the taxable years does not appear. Certainly the mortgaging of the home about 1937 relied on as a contribution by her is not such on the evidence of petitioners' statements in the protest to a contrary contention. Her contributions appear as nothing more than a family matter, and in the absence of written or oral agreements of partnership or records to substantiate the contention, fail to convince. The terms or conditions of the partnership agreement suggested to petitioners' attorney were not shown. Much of the testimony, moreover, was elicited by leading questions despit repeated warnings in that regard. Books and records were kept which, though they were apparently not in good condition, could have been produced but were noticeably *245 absent. The capital contribution element is not satisfactorily demonstrated by the evidence before us. The mere view between husband and wife that they were partners, without proof of agreement of partnership, either oral or written, is not sufficient under these facts to sustain petitioners' burden. The contribution of some $1,700 or $1,800 to a project of about $35,000 in 1937 does not, under all the facts in this case, constitute the proof necessary here. Chris Nelsen Company for 1939 reported gross income of $157,858.16; for 1940, $139,593.85, and net income, respectively, of $22,893.74 and $14,129.38 as before the taxable years had started; while for the years 1941, 1942 and 1943, the gross income was $366,847.63, $569,838.24 and $442,479.80, respectively, and net income was, respectively, approximately $107,000, $24,000 and $93,733. The Tower case, supra, also established the rule that another test of partnership between husband and wife is whether she substantially contributes to the control or management of the business, or otherwise performs vital additional services. To a large degree the evidence as to whether Anine K. Nelsen performed services in connection with the business *246 is in regard to the business before January 1, 1941. There is some evidence that she entered into "discussions" on bids and purchase of machinery but it is not sufficient to convince us that she substantially contributed to the control or management of the business, or otherwise performed vital additional services. The protest above referred to in effect minimizes her contribution of services, when a different contention was being pressed, as to value of good will in her estate; for there it was urged that the husband and son had complete supervision of all construction work. The tenor of the evidence leads us to believe that she was doing nothing more than any other wife would have done under the circumstances. We conclude that her activities, from a business standpoint, are not sufficient to justify us holding her a partner based on services contributed to the business. Her activities come no closer to qualifying as such than did the wife in the case of Floyd D. Akers, 6 T.C. 693, where we held no partnership from the services standpoint. We therefore conclude that the respondent did not err in determining that Annie K. Nelsen was not a bona fide partner in Chris Nelsen *247 Co. during the taxable years here in question; and petitioner has not shown that he is not taxable upon two-thirds of its net income for those years. 2. Entertainment and Sales Expense Issue The issue here is whether respondent erred by disallowing entertainment and sales expense of the Chris Nelsen Co. in the amount of $3,000 for 1941 and $15,000 for 1942. The petition recites that the facts upon which petitioners rely are that Chris Nelsen estimated that he spent these amounts for the business and that he was reimbursed at the end of the year. Apparently the petitioner's theory was that if the partnership indirectly paid the expenses, because of repaying Chris Nelsen who allegedly paid them, then Chris Nelsen may take the deduction not allowed to the partnership. Assuming that petitioners have proved that Chris Nelson spent the above amounts it has not on petitioners' theory been proved that the Chris Nelsen Co. either reimbursed petitioner or gave him credit on the books of the company. The return of the partnership for 1941 shows no item of $3,000 for entertainment or sales expense, that item being $1,700. The return for 1942 shows "$16,134.23 as traveling sales and entertainment *248 expense." It appears that if any amount was spent it was spent by petitioners but we find no proof in the record to substantiate the claim in the petitions that Chris Nelsen was reimbursed for these expenditures. (Robert E. Nelsen testified that he was reimbursed for $3,000 spent in 1942.) Petitioner Chris Nelsen testified as follows in regard to these payments: Q. Would you be reimbursed for the amount you spent? A. No. Q. Were you credited on the books for your personal account for the amounts you spent? MR. PRICE: Your Honor, object to that, the witness is not the proper person to give that testimony. The books themselves should indicate that information and be the best evidence. THE COURT: The objection is sustained. Partnership expenses are a matter for deduction in the partnership return, not by the individual partner in his own. Hiram C. Wilson, 17 B.T.A. 976; Int. Rev. Code, sec. 183. The items here involved being claimed as partnership expenses because paid for it by the petitioner Chris Nelsen as partner, and it appearing that (except for the $3,000 claimed to be repaid to Robert E. Nelsen in 1942) the amounts were not repaid *249 to the partner, they are not deductible in these proceedings instituted by the partners. Moreover, the $3,000 item for 1941 was not claimed either in the partnership return or that of Chris Nelsen, and appears to be an afterthought. That return was prepared by certified public accountants. Though Robert E. Nelsen testified that he paid $3,000 of the $15,000 item in 1942, the theory of the petitioners as appearing in the petition is that Chris Nelsen paid the entire amount, and received reimbursement, which as above seen he did not receive. In addition, the evidence is altogether unsatisfactory and insufficient to establish the deduction claimed. Chris Nelsen testified (in conformity to the petition) that at the end of the year he estimated the amounts; further, "I take a rough guess at it and - well, I mean -." Though some monthly slips for 1942 were produced, totaling $14,085, there is nothing but the most general statements as to the nature of the expenses covered, in the nature of conclusions, and otherwise unsubstantiated by receipts, checks or other data. We feel that we too would be taking a rough guess were we to approve the expenses, even if they were those of the individuals. *250 The Commissioner's action is approved. 3. $1,700 Wages and Salaries Issue The return of the partnership for 1941, as above seen prepared by certified public accountants, claimed $1,700 for entertainment and sales expense. It is now urged that this amount was expended for bonuses paid employees. The change in approval is not satisfactorily explained. The only evidence submitted by petitioner on this issue was his own testimony that he checked the money out of the bank and paid it to the employees in cash as a bonus. No employee was called for corroboration, though some were still in the employ of Chris Nelsen and others still in the city. No records were produced. Upon brief petitioner relies upon such testimony to support a proposed finding that such a payment was made. We are asked to accept this testimony of an interested witness as proof of payments. Without being supported or corroborated by any other evidence, it is not enough to overcome the presumption that the respondent's determination is prima facie correct. The effect of the testimony of petitioner here is a conclusion, given without any circumstances to gauge its accuracy. See Easton v. Bryant, 19 Fed. (2d) 857; *251 Birnbaum v. Commissioner, 117 Fed. (2d) 395; Hoefle v. Commissioner, 114 Fed. (2d) 713; Hiram C. Wilson, supra.
The evidence submitted here goes no further in proving petitioner's case than a signed statement by petitioner in his income tax return or in his claim for refund. By the evidence submitted, petitioner has not proved that the Chris Nelsen Co. is entitled to a deduction of $1,700 as wages and salaries as claimed herein, or as bonuses. 4. Contributions Issue Petitioner here claims deductions for contributions in the amounts set forth in the facts above and the respondent has disallowed them for lack of substantiation. The bulk of the evidence on which petitioner rests his case is his oral statement that he made contributions to the St. Peter's Lutheran Church and Red Cross of the above-mentioned amounts in the following manner: Q. During the year 1941 did you make a contribution to the Red Cross? A. We do that every year. Q. Did you make one personally? A. Yes, I did. Q. And what was the amount of it? A. Well, I don't recollect the amount. Sometimes we give a hundred dollars, sometimes fifty dollars, sometimes two hundred *252 dollars. Q. Well, the amount claimed is a hundred dollars: Did you give it? A. I sure did if it's on there. * * *
Q. In 1941 you claim a deduction of a hundred dollars to St. Peter's Lutheran Church. Would that be made in the form of one contribution or a series of contributions? A. Well, I give it every now and then when I go to church. I believe I gave more than that, more than what I got in there. * * *
Q. During the year 1941 how much were your contributions to St. Peter's Lutheran Church? A. Well, that's kind of a hard question to answer. I can't just remember; I don't keep a record of every cent I give to them, but I presume I gave them at least a hundred dollars, maybe I gave them two hundred dollars. I got a lot of answers in my head and I can't answer just to the dollar what I gave them six or seven years back. * * *
Q. For 1942 you claim a deduction of five hundred dollars to St. Peter's Lutheran Church and five hundred dollars to the Red Cross. Now, as to the contribution to the Red Cross was that made by cash or by check? A. Some of it was made by cash and I believe there was one check for two hundred dollars and the rest, I think I paid out *253 of my personal pocket in cash. * * *
Q. In 1943 you claimed contributions to St. Peter's Lutheran Church of five hundred dollars. Do you know how those contributions were made? A. They were made by my own personal checks or cash whenever we went to church. Q. During the year would the total of your contributions have been as much, or in excess of five hundred dollars? A. I believe it would exceed the five hundred. Such statements as these do not sufficiently prove the payments of the contributions claimed. As discussed in the previous point, such statements offer no further proof than the claiming of the deductions in the tax returns filed. The reasons advanced in the previous point and the cases cited there apply also to this issue. Exhibit No. 5, a Red Cross receipt showing a contribution by Chris Nelsen & Son of $200 for 1943 along with the statement of petitioner that he actually made the contribution is not sufficient to overcome the presumption of correctness attached to the respondent's determination. The receipt indicates that the contribution was one of the business as against petitioner's own statement that it was his. The best evidence before us is that *254 the contribution was one of the business. However, it is probably true that some contributions were made during the taxable years. Being to charity, even if made by the partnership, such contributions could be claimed as deductions by a partner. Section 183 (c), Internal Revenue Code. Applying Cohan v. Commissioner, 39 Fed. (2d) 540, and bearing heavily upon the petitioner because of his own inexactitude, we conclude that he should be allowed, and we approve, deductions of one-half of the amounts claimed, that is, for 1941, $50 each to Red Cross and St. Peter's Lutheran Church, and for 1942, $250 to each; and $100 to Red Cross and $250 to the Church in 1943. Decisions will be entered under Rule 50.